******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JULIAN PEREZ
(AC 38129)

Prescott, Mullins and Bear, Js.

*Argued January 31—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of Hartford, geographical area number fourteen, Avallone, J. [judgment]; Dewey, J. [motion for return of seized property].)

*Mitchell Lake*, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Thomas J. O'Brien*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The issue before us in the present appeal is whether, following the dismissal of all charges against the defendant, Julian Perez, the trial court properly denied his motion requesting the return of a revolver that the police had seized at the time of his arrest.[1] The defendant appeals from the judgment of the court denying his second motion for the return of seized property. He claims on appeal that the court committed plain error by finding that defense counsel had agreed to forfeit the revolver as part of negotiations with the state that resulted in the dismissal of the charges.[2] The state argues that the record simply is inadequate for review of the defendant's claim or, in the alternative, that the defendant has failed to establish that the court's decision was plain error. On the basis of the record presented, we cannot conclude that the trial court improperly denied the defendant's motion, and, accordingly, we affirm the judgment of the court.

The record reveals the following facts. On May 22, 2014, the defendant was arrested by the Hartford Police Department on charges of disorderly conduct in violation of General Statutes § 53a-182, threatening in the second degree in violation of General Statutes § 53a-62, and possession of marijuana in violation of General Statutes § 21a-279 (c).[3] At the time of the arrest, the police seized from the defendant a concealed, loaded revolver for which he had a valid permit to carry.

The defendant was arraigned the following day, and the trial court, *T. Santos*, *J.*, found probable cause for all the charges. The court appointed Jonathan Newman, an assistant public defender, to represent the defendant for bond purposes only. The defendant was released on a promise to appear on June 16, 2014, with the conditions that he (1) surrender to the police any additional firearms he owned, (2) have no contact with the victim or the residence where the arrest occurred, and (3) submit to a drug test on his next court date.

On June 16, 2014, the defendant appeared and asked for a continuance to June 23, 2014, which the court granted. Although there was no appearance on file, the assistant state's attorney, Thomas J. O'Brien, indicated to the court on the record that the defendant's lawyer, who he identified as "Attorney Lawlor," had asked for the continuance. On June 23, 2014, O'Brien indicated to the court that the defendant had rendered a negative drug test, and, by agreement, the parties were requesting a new court date of July 7, 2014, "[f]or a possible offer that day." The court agreed. On July 7, 2014, the matter was continued by the court to July 28, 2014, because defense counsel "was not able to make it." The parties appeared again on July 28, 2014, at which time the court, at O'Brien's request, agreed to mark the matter over to September 12, 2014, because the

defendant was "going to engage in some counseling in an effort to try to resolve this case." On September 12, 2014, O'Brien asked that the matter be docketed for judicial pretrial on October 17, 2014. He indicated to the court that an offer had been extended to the defendant, "and if he chooses to comply with that, I'll honor the offer prior to the pretrial." The details of that offer were not discussed on the record.

The defendant failed to appear for the October 17, 2014 court date, and a bail commissioner's letter was sent, ordering the defendant to appear on November 14, 2014. At the November 14, 2014 hearing, O'Brien asked the court to mark the matter over by agreement to December 18, 2014, "as a possible diversionary marking." On December 18, 2014, O'Brien informed the court that the defendant had been compliant with all conditions of his release. He asked the court to continue the matter to May 22, 2015, as a diversionary marking, and indicated that, if the defendant remained compliant and there were no arrests or other problems, the state would enter a nolle prosequi to the charges and not oppose a dismissal. The court agreed to the state's request.

The case returned to the court, *Avallone, J.*, on May 22, 2015.[4] At that time, O'Brien represented to the court that "[the defendant] was compliant with all the conditions the court set. He completed the mediation program. And based on that, the state will enter a nolle and recommend a dismissal." There was no discussion on the record of any agreement between the state and the defendant regarding the property that was seized at the time of the defendant's arrest. The court noted the nolles and then dismissed all charges against the defendant. On the same date, the court also signed orders on form JD-CR-18, Inventory of Property Seized Without a Search Warrant, adjudicating as "contraband" all of the items on the inventory list of property seized—the revolver, the holster, the five rounds of ammunition, and the defendant's permit to carry a pistol or revolver—and ordered them turned over to the Connecticut State Police's Bureau of Identification for destruction. Notice of that order was issued to the Hartford Police Department on May 26, 2015. There is no indication in the record that the defendant was present when the court disposed of the seized property or that he was provided notice of the disposition.[5]

On June 3, 2015, the defendant, acting without counsel, filed a motion for return of seized property. That motion stated in its entirety: "1. I respectfully request this court to order the return of property seized by Hartford Police on May 22, 2014. 2. The item that was seized and that I request be returned is one Ruger LCR revolver [and] one State of Connecticut pistol permit ID card. 3. I request this return because all alleged charges in the matter have been dismissed in court."

The court, *Hon. Thelma A. Santos,* judge trial referee,

heard the motion for return of property the following day on June 4, 2015. O'Brien indicated to the court on the record that the motion was "a write-in," that the defendant was not present, that he had been represented by counsel when his case was dismissed on May 22, 2015, and that "[t]here was no agreement on the property on the dismissal date."[6] The record does not indicate whether the defendant had been provided with notice of the hearing. The state argued that Judge Avallone had ordered the property destroyed and that, because neither the defendant nor his counsel was present at the hearing to argue his motion, Judge Avallone's order should stand. The court denied the defendant's motion without engaging in any discussion or analysis of the basis for such a decision. The state asked if the items could be destroyed as previously ordered, and the court answered in the affirmative. The defendant did not file an appeal challenging Judge Avallone's disposition of the property or Judge Santos' order denying his motion, but the record is silent as to whether the defendant had notice of either order.

Instead, on June 23, 2015, the defendant filed a second motion for the return of seized property, which is the subject of the present appeal. The second motion was nearly identical to the first, except that it also asked for the return of the seized holster in addition to the revolver and permit, and included that "[t]he items were wrongfully ordered to be destroyed." A brief hearing on the motion was held before the court, *Dewey, J.*, on June 25, 2015. The defendant appeared without his counsel.

At the hearing, O'Brien indicated to the court that the items the defendant sought to have returned previously had been ordered turned over to the state police for destruction and a prior motion by the defendant for the return of the property had been denied. O'Brien recounted that the underlying charges involved alcohol and an allegation that the "gun was threatened to be displayed," as reflected in the arrest report attached to the motion. The state's position was that the gun should not be ordered returned to the defendant.

The court asked the defendant to explain why the items should be returned to him after they already had been ordered destroyed by another judge. The defendant first explained that he had not been timely notified of the hearing on his first motion for return of seized property, "which is probably why it was denied the first time." The defendant next argued that his former defense counsel should have filed whatever paperwork was necessary to have the seized property returned, but "[t]*hese were his quote, unquote tactics of getting the case dismissed.* He didn't want to file any paperwork until it was over." (Emphasis added.) The defendant stated that he first learned that the revolver had been ordered destroyed when he called the Hartford Police

Department after his case was dismissed to discuss retrieving his property.

The court indicated to the defendant that it understood his arguments regarding notice, but that the court also understood the defendant as having admitted that his defense counsel forfeited his rights to the revolver as a plea bargaining tactic, and that the state had relied on this representation in agreeing to enter nolles on the charges against him. The court explained: "[W]hen you admit that it's part of a trial tactic, it's difficult for me to say, now, well, that was part of the agreement to get the dismissal. But, now, I want the gun back." The defendant argued that he did not learn of his counsel's tactics until "after the fact," but the court stated that issue was "between you and your lawyer. Unfortunately, the state relies on the lawyer's representations when it enters the offers." The court then asked O'Brien whether its understanding of the situation was correct, to which O'Brien replied: "Correct. Correct. Your Honor, my recollection is I had discussions with counsel about this pursuant to the plea." The defendant never disputed the court's characterization of his argument as an admission that his counsel had agreed to the forfeiture of the revolver as part of a plea agreement, nor did he dispute the assistant state's attorney's representation that such an agreement existed. The court denied the defendant's second motion for return of seized property and ordered that the revolver be destroyed. The court explained that it was denying the motion "on the basis that was part of the agreement. Whether you knew it or not, that was part of the agreement. And the state relied on that. You have to file an appeal."[7] This appeal followed.

The defendant claims on appeal that the court improperly denied his second motion for the return of his revolver. In support of that claim, the defendant argues that (1) the state, in order to obtain a forfeiture, was obligated to first initiate an in rem proceeding pursuant to General Statutes § 54-33g, (2) the record does not reflect that the revolver was forfeited pursuant to General Statutes § 54-36a (e), and (3) defense counsel lacked authority to enter into a disposition of the criminal charges that involved a disposition of the defendant's revolver because he never ratified any such agreement. We are not persuaded.

We begin our discussion with the applicable standard of review. Although we have not had occasion previously to set forth our standard of review for a trial court's decision on a motion seeking the return of seized property, the scope of our review is a familiar one. If the legal conclusions of the court are challenged, we determine if they are legally and logically correct and whether they find support in the facts; and, to the extent that the factual basis of the court's ruling is challenged, we determine if the facts relied upon by the court are

supported by the evidence or if, in light of the evidence and the record as a whole, those facts are clearly erroneous. See *State* v. *Owens*, 38 Conn. App. 801, 804–805, 663 A.2d 1094, cert. denied, 235 Conn. 912, 665 A.2d 609 (1995).

We next briefly set forth the applicable law that governs the final disposition of property seized at the time of arrest without a warrant, which, in relevant part, is set forth in § 54-36a. Subsection (c) of § 54-36a provides: "Unless such seized property is stolen property and is ordered returned pursuant to subsection (b) of this section or unless such seized property is adjudicated a nuisance in accordance with section 54-33g, or unless the court finds that such property shall be forfeited or is contraband, or finds that such property is a controlled drug, a controlled substance or drug paraphernalia as defined in subdivision (8), (9) or (20) of section 21a-240, it shall, at the final disposition of the criminal action or as soon thereafter as is practical, or, if there is no criminal action, at any time upon motion of the prosecuting official of such court, order the return of such property to its owner within six months upon proper claim therefor."

Before turning to the particular arguments advanced by the defendant, we recognize initially that the record before this court is exceedingly sparse. The defendant, as the appellant, has the burden of providing this court with an adequate record to review his claims of error. See Practice Book § 61-10; *State* v. *Cotto*, 111 Conn. App. 818, 820–21, 960 A.2d 1113 (2008). There is no evidence in the record disclosing the precise details of any agreement that may have been entered into by defense counsel and the state regarding the disposition of seized property generally and, more specifically, whether the defendant's counsel agreed to the destruction of the revolver as contraband in order to secure a dismissal of the charges against the defendant. Nevertheless, we construe the court's decision to deny the defendant's motion as resting upon its finding that such an agreement existed. We cannot conclude that that finding is clearly erroneous on the basis of the record before us.

I

The defendant first argues that he was entitled to the return of the revolver because the state failed to initiate an in rem proceeding regarding the revolver in accordance with § 54-33g. We disagree.

Section § 54-33g authorizes the state to file a civil action in rem for the purpose of determining whether property "has been used in violation of the law and is thus subject to forfeiture." *State* v. *Gaudio*, 19 Conn. App. 588, 591, 562 A.2d 1156 (1989). As explained, however, by this court in *State* v. *Garcia*, 108 Conn. App. 533, 553, 949 A.2d 499, cert. denied, 289 Conn. 916, 957

A.2d 880 (2008), "seized [property] does not require in rem forfeiture proceedings, as unseized property does." (Emphasis omitted.) Accordingly, because the defendant's revolver was seized by police incident to his arrest, the state was not required to initiate an in rem civil proceeding in this case, and the court had the authority to dispose of the revolver as part of the criminal proceedings in accordance with § 54-36a (c). Id., 554. The defendant's argument to the contrary simply lacks merit.

## II

The plaintiff next argues that he was entitled to the return of his property because it was never forfeited in accordance with § 54-36a (e). We are not persuaded.

Section 54-36a (e) provides in relevant part that, with certain exceptions not relevant here, if "seized property is adjudicated a nuisance or if the court finds that such property shall be forfeited or is contraband . . . the court shall order that such property be destroyed . . . ."

As part of his disposition of the defendant's criminal charges, Judge Avallone found, in accordance with § 54-36a (e), that the revolver, ammunition, holster and permit were contraband, and he forfeited ownership of them to the state to be destroyed. Even assuming that the defendant was not provided notice of Judge Avallone's decision forfeiting his ownership rights to the seized property, by his own admission, he soon thereafter learned from the police department that the court had ordered the items destroyed. Rather than challenge that ruling by filing an appeal, the defendant filed two consecutive motions seeking a new order first directing the police to return the revolver and permit to him as the rightful owner, and second adding the holster to the property to be returned.

Because the defendant never challenged Judge Avallone's finding that the items were contraband and, thus, subject to forfeiture, by filing an appeal to this court, that finding remained the "law of the case." Judge Dewey, in disposing of the defendant's second motion for return of seized property, was not asked and was under no obligation to readjudicate that finding sua sponte. In short, there is simply no merit to the defendant's argument that the revolver should have been returned because it was never properly forfeited in accordance with § 54-36a.

## III

Finally, the defendant argues that the court should have granted his motion for return of seized property and ordered the return of his revolver because he never authorized his defense counsel to forfeit his revolver as part of plea negotiations. This argument is unpersuasive.

As previously indicated, the court's decision to deny the defendant's motion was not made on the basis of an independent determination as to whether the revolver was contraband, but upon the representations made by the assistant state's attorney and the defendant that the defendant's counsel had forfeited on behalf of the defendant any claim to the revolver as part of plea negotiations. Although Judge Dewey did not conduct an evidentiary hearing before ruling on the defendant's motion, the defendant never asked her to do so. See *State* v. *Nguyen*, 253 Conn. 639, 660, 756 A.2d 833 (2000) (trial court has no duty to conduct evidentiary hearing sua sponte). The defendant did not ask to submit any evidence to the court in support of his motion or argue that there was a lack of evidence regarding the specifics of any plea agreement. Although unsworn representations by counsel ordinarily "are not 'evidence' upon which an appellate court can rely when reviewing the findings of the trial court; *State* v. *Carsetti*, 12 Conn. App. 375, 379, 530 A.2d 1095, cert. denied, 205 Conn. 809, 532 A.2d 77 (1987); the defendant did not challenge those representations to preserve any claim based on those representations. See *State* v. *Smith*, 289 Conn. 598, 609, 960 A.2d 993 (2008). In addition to not challenging the statements made by O'Brien to the court, the defendant also failed to challenge the court's characterization of his own statement as an admission that an agreement was entered into by defense counsel as a trial tactic to secure dismissal of all charges.

The defendant never argued before the trial court that his attorney was not authorized to negotiate on his behalf regarding the disposition of the revolver. He makes that argument for the first time on appeal. Regardless, even if true, his lack of knowledge or consent to an agreement does not negate the court's finding that an agreement in fact was made and that the state relied upon defense counsel's authority in agreeing to enter nolles on the charges against the defendant.

In sum, as the proponent of the motion for return of seized property, it was the defendant's burden to establish his entitlement to the return of that property. We cannot conclude on the basis of the record presented that the defendant met that burden or that the court's decision to deny his motion was improper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The police also seized five rounds of ammunition, the revolver's holster, the defendant's permit to carry a pistol or revolver, and a small amount of marijuana. On appeal, the defendant only challenges the court's decision not to return his revolver.

[2] Although, in his appellate brief, the defendant invokes the plain error doctrine as the appropriate standard of review, that invocation is misplaced. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks

omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013). Having reviewed the record, we conclude that the defendant preserved his claim that the court improperly determined that defense counsel agreed on behalf of the defendant to forfeit the revolver as part of plea negotiations with the state, and, thus, we review the claim on that basis. Although, in its appellate brief, the state understandably limits its analysis to plain error because that is the standard the defendant invoked, the state cannot claim prejudice from our decision to address his claim in that manner because we, nonetheless, determine on the basis of that review that the defendant's claim fails.

[3] According to the police report, a copy of which the parties appended to their appellate briefs, two uniformed officers heard a disturbance coming from a nearby property. Upon investigating, they discovered the defendant and another male at the rear of the property engaged in a heated argument. As they approached, the officers alleged that they heard the defendant state loudly to the other male: "Shut the hell up, I'll shoot you, don't you know I have a fucking gun!" The officers took both individuals into custody, during which they discovered a holstered revolver loaded with five rounds of ammunition concealed on the defendant's right side. The defendant also possessed a small quantity of marijuana. The marijuana and the revolver, along with its holster and five rounds of ammunition, were tagged as evidence. A Connecticut permit to carry the revolver issued to the defendant also was seized and tagged for "safe keeping" pending a referral to the issuing agency. The defendant's permit later was revoked.

[4] There is no indication in the transcript whether the defendant appeared before the court or, if he did appear, whether he was accompanied by counsel.

[5] Although the defendant has not appealed from Judge Avallone's May 22, 2015 order, and, thus, the propriety of that order is not squarely before us, we note that the court appears to have utilized the firearms/contraband portion of form JD-CR-18 to dispose of certain items on the inventory list—in particular, the holster and the permit to carry a pistol or revolver—that, on their face, do not appear to be contraband as that term is defined by statute. General Statutes § 54-36a defines "[c]ontraband" as "any property, the possession of which is prohibited by any provision of the general statutes . . . ." The record is silent as to why the court adjudged those particular items as contraband and ordered them destroyed, or on what basis the court determined that the revolver and ammunition were contraband if, as it appears from the record, they were lawfully possessed by the defendant at the time he was arrested. Furthermore, there is nothing in the record that definitively establishes that Judge Avallone determined that the property had been forfeited by agreement of the parties or as part of any diversionary program. In accordance with § 54-36a (c), items seized in connection with a criminal arrest that are not stolen property, contraband, illicit drugs, or drug paraphernalia ordinarily should be returned to the property's owner upon final disposition of the criminal action or as soon thereafter as is practical. The record simply does not satisfactorily support the court's initial disposition of the property in this case. Nevertheless, the issue before us is whether Judge Dewey properly refused to issue an order countermanding the disposition ordered by Judge Avallone.

[6] This statement appears to contradict O'Brien's later assertion before Judge Dewey that he and defense counsel had agreed that the defendant would not make a claim for the return of the weapon in exchange for the favorable disposition of his case.

[7] The court had explained earlier to the defendant that the order that the revolver be destroyed would be stayed for a very short statutory time period in which the defendant could file an appeal from the court's order.