******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARCOS
A. VELAZQUEZ
(AC 40224)

Alvord, Bright and Bear, Js.

*Syllabus*

Convicted, following a bench trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs, the defendant appealed to this court, claiming that there was insufficient evidence to sustain his conviction and that the trial court improperly admitted certain testimony of a police officer. The defendant had been involved in an accident in which the investigating police officers determined that he had been the operator of the motor vehicle that collided with two other vehicles. At trial, during the state's direct examination of D, a police officer who responded to the scene of the accident, D testified that he smelled the odor of marijuana in the defendant's car but he did not smell the odor of marijuana on the defendant's person. Following D's testimony, defense counsel, claiming that the state committed a discovery violation because it had not disclosed that D would testify about the odor of marijuana, moved for a mistrial and a dismissal of the charge. The trial court denied defense counsel's motions and found the defendant guilty. *Held*:

1. This court concluded, on the basis of the evidence presented at trial and the reasonable inferences drawn therefrom, that there was sufficient evidence for the trial court to have found the defendant guilty beyond a reasonable doubt of operating a motor vehicle while under the influence of intoxicating liquor or drugs, specifically, marijuana or Gabapentin, or both: the defendant did not dispute that he was operating a motor vehicle on a public road at the time of the accident, and the state elicited testimony from the investigating police officers that the defendant failed three field sobriety tests, that he was stumbling around and slow to respond to questions and directions, appeared dazed and confused, appeared unaware that he had been in a car accident, refused to provide a urine sample following his arrest, and admitted to the officers that he had smoked marijuana approximately one hour before the accident and that he also had consumed regular prescription medication, Gabapentin, which he had admitted to a medical professional one month earlier caused him to feel drowsy and unable to function, and a forensic toxicologist testified that Gabapentin should not be taken prior to operating heavy machinery, such as a motor vehicle, and that the side effects of that drug included negative cognitive effects, dizziness and lack of coordination.

2. The trial court did not abuse its discretion in failing to strike D's testimony with respect to the marijuana odor coming from the defendant's vehicle: in its oral decision, the court identified the evidence that it relied on to conclude that the defendant was guilty beyond a reasonable doubt, and nowhere in that recitation did it rely on any reference to D's testimony about the odor of marijuana, and, even if the court did abuse its discretion in allowing that testimony, given the remaining evidence before the court with respect to the defendant's guilt beyond a reasonable doubt, any error was harmless.

Argued February 3—officially released June 2, 2020

*Procedural History*

Substitute information charging the defendant with the crime of illegal operation of a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of Hartford, geographical area number twelve, where the case was tried to the court, *Lobo, J.*; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Marcos A. Velazquez*, self-represented, the appellant, filed a brief (defendant).

*Melissa Patterson*, assistant state's attorney, *Gail P. Hardy*, state's attorney, and *Sara Greene*, assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

BEAR, J. The self-represented defendant, Marcos A. Velazquez,[1] appeals from the judgment of conviction, rendered following a bench trial, of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both in violation of General Statutes § 14-227a (a) (1).[2] On appeal, the defendant claims that (1) there was insufficient evidence to sustain his conviction and (2) the court improperly admitted the testimony of a police officer with regard to the presence of a marijuana odor in the defendant's vehicle at the time he was involved in an accident. We affirm the judgment of the trial court.

The trial court's oral decision sets forth, and the record reveals, the following relevant facts and procedural history. On March 24, 2015, while the defendant was operating a motor vehicle near 914 Silver Lane in East Hartford, he sideswiped one motor vehicle, reversed direction, and then rear-ended a second motor vehicle. Following the second collision, the police arrived on the scene and interviewed the defendant and the operators of the other vehicles. The police determined that the defendant was the operator of the vehicle that collided with the two other vehicles.

Shortly after the collisions, the investigating officers found the defendant to be "dazed and confused, stumbling around, [and] unaware of where he came from and even knowing that [he had] been in an accident." Additionally, "[h]e overwhelmingly failed the horizontal gaze nystagmus test, the walk and turn test, and the one-legged stand test." When speaking with the police, the defendant admitted to using marijuana approximately one hour prior to the collisions. The defendant further admitted taking Gabapentin, a medication that was prescribed to treat the effects of some of his preexisting injuries. He also admitted that Gabapentin made him drowsy and unable to "function."[3]

During trial, Sergeant John Dupont of the East Hartford Police Department testified about his interactions with the defendant at the scene of the accident. Dupont testified, among other things, that he smelled an odor of marijuana inside the defendant's car, but he did not smell any odor of marijuana coming from the defendant's person. Following Dupont's testimony, defense counsel claimed that the state committed a *Brady*[4] violation and a discovery violation because it failed to disclose that Dupont had smelled marijuana in the defendant's car and that Dupont would testify about it. As a result, defense counsel moved for a mistrial and a dismissal of the charge of operating a motor vehicle while under the influence. After the court conducted a *Brady* hearing, defense counsel admitted that there was no *Brady* violation with respect to Dupont's testimony about the odor of marijuana. Defense counsel, however,

asserted that, pursuant to his discovery requests, the state should have disclosed prior to trial that Dupont would testify about the odor of marijuana in the defendant's vehicle. The court denied defense counsel's requests because it concluded that Dupont's testimony about the odor of marijuana in the defendant's vehicle constituted neither a *Brady* violation nor a discovery violation.

On January 6, 2017, the trial court found the defendant guilty of operating a vehicle under the influence of intoxicating liquor or any drug or both in violation of § 14-227a (a) (1). Specifically, the court concluded that, "[w]hen considering the defendant's admission to marijuana use approximately an hour before the accident, his admission [to a health care professional] one month prior as to the side effects . . . [and] impacts that Gabapentin was having on his functioning, the nature of the accident, the defendant's behaviors exhibited following the accident in conjunction with his failures on the standard field sobriety test, this court finds . . . beyond a reasonable doubt that the defendant's physical and mental capabilities were impaired to a degree . . . [t]hat he no longer had the ability to drive a motor vehicle with the caution and characteristic[s] of a sober person of ordinary prudence."

After the court found the defendant guilty, the defendant moved for a continuance, which was granted by the court, to file a sentencing memorandum and postverdict motions. Subsequently, the defendant filed a motion for a judgment of acquittal, arguing that there was insufficient evidence to meet the requisite standard of guilt beyond a reasonable doubt. He also filed a motion for a new trial in which he argued, among other things, that relief should have been granted pursuant to Practice Book § 40-5[5] with regard to Dupont's testimony concerning the odor of marijuana in the defendant's vehicle. On January 13, 2017, the court denied the defendant's motions and sentenced him to six months incarceration, execution suspended after four months, followed by two years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to sustain his conviction. He argues that both he and the state produced expert testimony, but that the toxicologist produced by the state and the toxicologist that he had produced reached opposite conclusions as to whether he was under the influence of alcohol or drugs. The defendant asserts that the state's toxicologist testified that he may have been under the influence only of drugs. He also asserts that the urine test he took at Hartford Hospital, within three days of the accident, "indicated that he wasn't under the influence at the time of the accident." Finally, he asserts that a blood test taken by his primary doctor also "indicated that he

wasn't under the influence at the time of the accident."

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the [fact finder] if there is sufficient evidence to support the [fact finder's] verdict . . . ." (Internal quotation marks omitted.) *State* v. *Watson*, 195 Conn. App. 441, 445, 225 A.3d 686, cert. denied, 335 Conn. 912,      A.3d      (2020).

Additionally, as our Supreme Court often has noted, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 152, 976 A.2d 678 (2009).

The court found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both in violation of § 14-227a (a) (1). In order for the court to have found beyond a reasonable doubt that the defendant was guilty, the state needed to prove that the defendant (1) operated a motor vehicle (2) on a public road (3) while under the influence of intoxicating liquor or any drug or both.[6] See *State* v. *Gordon*, 84 Conn. App. 519, 527, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

During trial, the state elicited the following testimony from the police officers who investigated the incident: (1) immediately after the incident, the defendant "appeared dazed and confused and did not appear like he knew where he was . . . he was stumbling around . . . [and] [n]ot steady on his feet"; (2) the defendant was slow to respond to questioning and directions; (3) the defendant, while at the scene of the incident, appeared to be unaware that he had been in a car accident; (4) the defendant admitted to the police that he smoked marijuana approximately one hour prior to the accident and that he also consumed regular prescription medication, which he had admitted to a medical professional one month earlier, caused him to feel drowsy and unable to function; (5) the defendant failed three separate field sobriety tests;[7] and (6) after he was arrested, the police attempted to obtain a urine sample from the defendant, but the defendant refused to pro-

vide one.

The state also elicited the testimony of Robert Powers, a forensic toxicologist. Powers testified that Gabapentin, the defendant's prescribed medication, should not be taken prior to operating heavy machinery, such as a motor vehicle, and that the side effects of taking Gabapentin include negative cognitive effects, dizziness, and lack of coordination.

On the basis of this evidence, and the reasonable inferences drawn therefrom, we conclude that there was sufficient evidence for the court to have found the defendant guilty beyond a reasonable doubt of operating a motor vehicle while under the influence of marijuana or Gabapentin, or both.[8]

## II

Next, the defendant claims that the court erred when it failed to strike Dupont's testimony with respect to the marijuana odor coming from his vehicle. Specifically, the defendant asserts that Dupont did not file a written report, that he was "completely surprised" because he did not have prior notice that Dupont's testimony that there was an odor of marijuana in his vehicle would be presented during trial, and that the state's failure to disclose that testimony prior to trial constituted a discovery violation.[9] The defendant further posits that he was prejudiced by Dupont's testimony because had he known of that testimony in advance, he would have accepted a plea bargain offer prior to trial in order to obtain a more favorable result. The state contends that the court did not abuse its discretion in denying the defendant's motion to strike Dupont's testimony about the marijuana odor. In the alternative, the state argues that any error in allowing that testimony was harmless. Because the trial court specifically stated that it did not consider Dupont's testimony about the marijuana odor, we agree that its admission did not harm the defendant.[10]

"[W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony . . . the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the . . . verdict was substantially swayed by the error. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citations omitted; internal quotation marks omitted.) *State* v.

*Jackson*, 183 Conn. App. 623, 648, 193 A.3d 585, rev'd on other grounds, 334 Conn. 793, 224 A.3d 886 (2020).

In its oral decision, the court identified the evidence that it relied on to conclude that the defendant was guilty beyond a reasonable doubt. Nowhere in the court's recitation of the evidence did it rely on any reference to Dupont's testimony about the odor of marijuana in the defendant's vehicle. Moreover, during the trial, the court stated that it did not "[find] the testimony that the car smelled of marijuana . . . to be that material [to] the case." The court further stated that it was not drawing the conclusion that the defendant had been smoking marijuana less than one hour before the collision. Accordingly, even if the court did abuse its discretion in denying the defendant's motion for relief, given the remaining evidence before the court with respect to the defendant's guilt beyond a reasonable doubt, we conclude that any error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was represented by counsel during his criminal trial.

[2] Although the state appeared for oral argument, the defendant did not appear. Because of the absence of the defendant, the state waived its right to oral argument. Therefore, this court considers this appeal on the briefs submitted by the parties. See, e.g., *State* v. *Cotto*, 111 Conn. App. 818, 819 n.1, 960 A.2d 1113 (2008).

[3] The state's expert witness testified at trial that side effects associated with Gabapentin include fatigue, dizziness, lack of coordination, and cognitive effects similar to that caused by other central nervous system depressants.

[4] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[5] Practice Book § 40-5 provides in relevant part: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate . . . ."

[6] The defendant does not dispute the fact that he was driving his vehicle on a public road at the time of the accident. He denies, however, that he was under the influence of intoxicating liquor or any drug.

[7] During trial, the police officers testified about the results of three field sobriety tests that they administered to the defendant. Specifically, they testified that during the horizontal gaze nystagmus test, the defendant's eyes moved involuntarily, a typical sign of impairment; during the walk and turn test, the defendant swayed back and forth and could not remain on the straight line; and, for the one leg test, he could not keep his balance or stand on one leg.

[8] Although the defendant argues that he presented evidence at trial that proved he was not under the influence of either marijuana or Gabapentin, insofar as the defendant challenges the trial court's determinations of his or other witnesses' credibility, we note that "[i]t is well established . . . that the evaluation of a witness' testimony and credibility are wholly within the province of the trier of fact. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . [*Emerick* v. *Emerick*, 170 Conn. App. 368, 378–79, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017)]." (Internal quotation marks omitted.) *Al-Fikey* v.

*Obaiah*, 196 Conn. App. 13, 18,    A.3d    (2020).

[9] As previously set forth, the defendant originally claimed a *Brady* violation but subsequently withdrew that claim.

[10] Although we do not rely on it in this opinion, we note that the defendant has not set forth either the legal basis for his claim or any authority supporting it.

---